# CARR *v.* FIFE *et al.*

### (*Circuit Court, D. Washington, W. D.* January 7, 1891.)

1. **JURISDICTION OF FEDERAL COURT—ACTIONS ARISING UNDER LAWS OF THE UNITED STATES.**

   A suit in which the plaintiff claims to have acquired a vested right to land by full compliance with the United States homestead law, and seeks to obtain a conveyance of the title from defendants, claiming the land under a patent issued to another, is a case arising under the laws of the United States, and within the jurisdiction of a United States circuit court.

2. **SAME—MOTION TO REMAND.**

   Such a case, commenced in a district court of the territory of Washington, and which was pending at the time of the admission of the state of Washington, was transferred to the United States circuit court after the papers and record in the case had passed into the custody of the clerk of a state court, and after a stipulation had been signed and filed in said state court, whereby the parties agreed to submit the case to said court for its decision, and after the defendants had filed in said court a written request to have the case so transferred, but before the court had acted upon said stipulation, or done any act amounting to an assumption of jurisdiction of the case. *Held*, that the request was filed in the proper court, and was in time, and that a motion to remand for want of jurisdiction must be denied.

3. **PUBLIC LANDS—CANCELLATION OF HOMESTEAD ENTRY.**

   The decision of the supreme court in *Lee* v. *Johnson,* (116 U. S. 48, 6 Sup. Ct. Rep. 249,) *held* to be conclusive upon a circuit court in a case involving identical legal propositions; and, without presuming to discuss the questions, *held,* in accordance with that decision, that in a contested case before the land department, the question at issue between the parties being as to the abandonment of a homestead, where the secretary of the interior found from the evidence that the contestee was not a *bona fide* homestead claimant, he did not exceed his jurisdiction in directing a cancellation of the entry, although the particular objection to the claim was not raised by the allegations of the contestant.

4. **EQUITY PRACTICE—RIGHTS INVOLVED.**

   In a suit by a private individual against the holder of a title to land by patent from the government only the plaintiff's right can be tried; and questions as to noncompliance on the part of the patentee with the requirements of the law under which the patent was issued cannot be relevant.

5. **RES ADJUDICATA—DECISION OF SECRETARY OF INTERIOR.**

   In the absence of fraud, and where no error is shown in deciding a distinct question of law, a decision of the secretary of the interior, holding a homestead claim to be invalid, and directing the cancellation of the entry, is final, and not subject to review in the courts.

6. **WITNESS—ADMISSIONS OF DECEDENTS.**

   The plaintiff is incompetent to testify as to admissions of a deceased person, through whom the defendants deraign title to the property in controversy, made after having parted with his title, in a case wherein some of the defendants are sued in a representative capacity, as executors of a deceased party, who is accused of fraud and conspiracy; such testimony being offered with the object of proving such accusations.

7. **FRAUD—PLEADING.**

   Relief on the ground of fraud cannot be granted upon mere inferences and suspicions.

*(Syllabus by the Court.)*

**In Equity.**

*Thomas Carroll* and *John Arthur*, for plaintiff.
*Galusha Parsons*, for defendants.

HANFORD, J. In this suit the plaintiff claims to be the equitable owner of a tract of land to which the defendants have the legal title, derived through one Robert E. Sproule, who obtained a patent for it from the United States. The plaintiff alleges that he settled upon it in the year 1871, and thereafter acquired a vested right to it by full compliance on his part with the provisions of the act of congress commonly known as the "Homestead Law," and the several acts amendatory thereof and supplemental thereto; and he especially claims the benefits of the laws affecting the homestead rights of persons who were in the military service of the United States during the late civil war. The prayer of the complaint is for a decree adjudging that the plaintiff is the owner of the land; that the defendants hold the title thereto under the patent in trust for him; and for a conveyance of said title to him. The grounds alleged for this demand are error in law on the part of the officers of the land department in issuing the patent to Sproule, and fraud on the part of said Sproule and the defendants in procuring the cancellation of plaintiff's homestead entry.

The case was commenced in 1887 in the district court for the second judicial district of the territory of Washington, holding terms at Tacoma, and proceeded to a final hearing in that court, but was not decided. After the admission of the state, a stipulation was signed, whereby the parties submitted the case for decision to the superior court of the state of Washington for Pierce county, but said court never acted upon said stipulation, and, after it had been filed, granted a motion made by the defendants to remove the case to this court, and signed an order to so transfer it. The plaintiff thereupon filed a motion to remand the case to said superior court, for the reason that this court has no jurisdiction in the premises. I think, however, that this court has jurisdiction, and cannot lawfully remand the case. The decision of the case involves the construction and application of the acts of congress affecting the rights of settlers on the public lands of the United States who seek to acquire title to such lands from the government. The case, therefore, is one arising under the constitution and laws of the United States, and one of which this court, if it had been in existence when the case was commenced, might have had jurisdiction. It was pending at the time the territory of Washington was transformed into a state, and, by request of the parties defendant, it has been transferred into this court. From the facts here stated it follows that, by the provisions of section 23 of the enabling act, (25 U. S. St. 683,) the jurisdiction of this court has attached and is perfect.

It is objected that the request to have the case transferred to this court was not made to the proper court, and not made in time. Section 23 of the enabling act referred to prescribes no limitation as to the time within which the request should be preferred, and leaves the parties to ascertain for themselves the "proper court" to receive and act upon the

request. In this instance the request was made to the state court which had come into possession of the papers and record of the proceedings in the case, and was made prior to any act of the court in relation to the case amounting to an assumption of jurisdiction. The record shows that the first and only act of the state court has been to order the removal of the case to this court.

When the case came on for hearing, the plaintiff filed a motion to defer the trial, on the ground that the district judge who was presiding, and the only judge of the court in attendance, had been employed by some of the defendants as an attorney on matters not connected with the case since the suit was commenced, though prior to his appointment. It is not asserted that the judge is legally disqualified, and it is only insinuated that, because of transactions in the past, he is liable to be partial, and incapable of rendering a just decision. It would result in clogging the operations of the courts, and intolerable delays in most cases, to adopt the principle that no case can proceed before a judge who at any time may have had any business relationship with any party to it; and it would be mere weakness on the part of a judge to refuse to perform the functions of his office merely because of insinuations against his ability to act impartially. For these reasons, the motion to postpone was denied, and the case proceeded to a hearing upon the merits.

The record shows that in 1873 Sproule was allowed to contest the plaintiff's right to this land, and, as the result of said contest, after successive hearings before the register and receiver of the district land-office, the commissioner of the general land-office, and the secretary of the interior, the plaintiff's homestead entry was canceled on the records of the general land-office at Washington, and thereafter said Sproule was allowed to enter the land under the provisions of the pre-emption law, and on the 13th of December, 1875, a patent was issued conveying the title to him. Any further or more detailed statement of the facts in the case is unnecessary. In their argument counsel for the plaintiff have taken the position most favorable for him which they could take, by assuming that the pleadings and facts shown by the record are such as to present fairly the questions,—whether the officers of the land department had any power to cancel the plaintiff's homestead entry,—and whether the defendants are precluded from claiming any rights for themselves under the patent by reason of fraudulent practices in obtaining the cancellation of plaintiff's entry. I will, to abbreviate this decision, make the same assumption, and let the decision of those questions determine the case.

As to the first question, contradictory opinions have been given by the courts. On one hand, the supreme court of the state of Michigan, in an able opinion, has sustained fully the plaintiff's argument and contention in this case. *Johnson* v. *Lee*, 47 Mich. 52, 10 N. W. Rep. 76. On the other hand, the same case was taken upon a writ of error to the supreme court of the United States, and was by the court of last resort, after full argument and due consideration of the able opinion of the supreme court of Michigan, reversed. *Lee* v. *Johnson*, 116 U. S. 48, 6 Sup.

Ct. Rep. 249. This last decision meets and overrules every argument made touching this point, and it is conclusive upon this court, so that any discussion of the question here would be idle. I am constrained, therefore, to hold that the secretary of the interior had authority to inquire and decide as to the validity of the plaintiff's claim to this land.

The questions which the secretary was called upon to decide were as to the good faith of the plaintiff,—whether he had actually, within the time limited by law, established his residence upon the land, with the intention of acquiring it for a home; whether he had continued to actually reside upon the land; whether he was really engaged in improving the land, or in good faith intending to do so; or whether he was only making a colorable pretense of residing upon and improving the land for the purpose of stripping it of its valuable timber, and acquiring it for speculative purposes, without complying with the terms of the homestead law. These are all questions of fact, and the secretary's decision thereon was final. No other questions appear to have been involved in the contest in the land department. Certainly the case, as it has been submitted in this court, does not present or disclose any error of the secretary, in deciding a distinct question of law. The fact that no question of law was involved or passed upon by the secretary is a sufficient answer to the comments made on the circumstance that the secretary's opinion has never found a place in any of the published reports of land-office decisions. The patent to Sproule has been assailed on the ground of alleged failure on his part to comply with the conditions prerequisite to obtaining title under the pre-emption law. It is charged that the overzealous land-office officials have exacted a forfeiture of plaintiff's rights on insufficient grounds, and, with amazing inconsistency, issued a patent to Sproule with undue and unusual haste, although he never made even a colorable show of compliance with the law; but this issue cannot come into this case. This is not a suit to destroy the title conveyed by the patent. The plaintiff's object is rather to acquire that title for himself. Unless he can succeed in this, it matters naught to him in what manner or to whom the government disposes of the land; and, if he is entitled to recover the land, it matters not how fully Sproule may have lived up to the requirements of the pre-emption law. I conclude, therefore, that the action of the department of the interior in canceling the plaintiff's homestead entry cannot be reversed for any mere error.

Next to be considered are the charges of conspiracy and fraud. The most serious specification is that the register of the land-office after the contest notified plaintiff by letter to the effect that the contestant had failed to prove abandonment, and thereby deceived him by leading him to suppose that a decision in his favor had been rendered, whereas the record was made to show that the decision was adverse to him. This is supported by only the plaintiff's own testimony, not corroborated even by production of the letter; and it is refuted by a letter to the commissioner of the general land-office, written by the plaintiff two days after the date of the decision by the register and receiver, in which he sets forth fully his claim to the land and his grievances regarding the contest,

and shows very clearly that he understood then that the case was to be passed upon by the commissioner. This letter further shows that the writer of it, instead of enjoying the feeling of self-complacency of a successful litigant, rather indulged in the bitterness natural to a man while smarting under a consciousness of being the victim of an unjust decision. In further refutation of this charge, the record shows that the attorneys who had conducted the case for the plaintiff in the land-office, and who were then, and are now, men of first-class reputation, and eminent in their profession, appealed the case to the commissioner, and after his decision again appealed it to the secretary, and filed their arguments in plaintiff's behalf, which were duly considered. I do not credit the plaintiff's claim that he did not know of the adverse decision, or of the appeal taken in his behalf, but, even if he did not know, his rights were as well guarded as they could have been were he fully informed. The plaintiff's testimony, given after the deaths of Sproule and of E. S. Smith, to the effect that Sproule, after their having parted with all his interest in the land, made certain admissions to the effect that he had been instigated and induced by said Smith to make the contest, is not legal evidence, and should be disregarded; but, even if received and if uncontradicted, taken together with all the evidence offered on behalf of the plaintiff, it falls a long way short of being sufficient to warrant the court in divesting the defendants of the valuable land in controversy, and giving it to the plaintiff. E. S. Smith did not acquire his interest in the land from Sproule, and he did not acquire it until several years after the issuance of the patent. In view of these facts, the testimony as to remarks by him to the effect that plaintiff's claim would be jumped; that it ought to be jumped; that the land would be taken from the plaintiff on account of his failure to reside upon it as the homestead law required, etc.,—affords no ground for even an inference that he was a party to any conspiracy to rob plaintiff of the land by means of unfair or fraudulent practices in the land-office.

The defendants other than Smith's representatives acquired their interests in the land by means of foreclosure proceedings against Sproule, and execution sales upon judgments against him, which proceedings and sales were several years after the patent was issued. The only ground alleged for charging them with fraud in this matter is that they are known to have been friends of Smith, and to have had dealings with him in other matters of business. In short, the court is expected to condemn these parties, and strip them of their title to this property, on general principles; but the court must decline to meet these expectations. There is no recognized exception to the rule that fraud will not be inferred, and that to obtain relief on this ground the acts constituting the fraud must be distinctly alleged and clearly proven. The only remaining specifications of the charge of fraud are that the case was decided in the department of the interior without due consideration of the plaintiff's rights. Both the commissioner and the acting secretary of the interior, who decided the case, have certified that due consideration was given to the case, and against this there is no evidence whatever except the fact that the decision

was adverse to the plaintiff. The argument.is that, with an intelligent understanding of the evidence in the case and the law applicable, there could not be an honest difference of opinion as to the plaintiff's rights. I think that I have fairly stated this point, and that in stating it I have sufficiently answered it. Certainly the court cannot, upon a mere inference, based upon nothing but a difference of opinion, decree a reversal of the action of the highest officers of one of the executive departments of the government because of official misconduct and fraud on the part of said officers. The plaintiff has failed to make a case entitling him to any relief according to the principles of equity, and, without considering the affirmative defenses pleaded, a decree dismissing the suit, with costs, must be awarded.