ALFRED A. BEAUREGARD & others *vs.* ROY M. DAILEY & others.

Hampden.  February 4, 1936. — April 17, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Equity Pleading and Practice*, Completion of pleadings; Master: qualification; Plea; Demurrer. *Constitutional Law*, Impartial tribunal. *Attorney at Law*.

The power of a judge of the Superior Court under Rule 2 of the Superior Court (1932), on the return day of an order of notice to show cause why a temporary injunction should not issue under a prayer of a bill in equity, to order the completion of the pleadings before the time within which, under Rule 25 and the subpoena issued in the suit, the defendant might appear and answer, was unquestionable where it appeared that, at the hearing on the return of the order of notice, the judge was not informed that his power so to do was questioned and that defendants then present or represented by attorneys assented to his order.

A member of the bar was disqualified to act as master in a suit in which one of the parties was his client of record in other litigation though his retainer for such client related to matters entirely disconnected with the issues being heard by him in the suit and he was retained and paid by an insurance company insuring his client.

Proceedings in a suit in equity before a master disqualified to act were a nullity and a report by him could not be made the basis of a decree.

While a defendant in a suit in equity, who has filed a demurrer, plea and answer, is not entitled as of right to a hearing on the demurrer or plea before the hearing on the merits, he has a right to a decision thereon at some stage of the proceedings.

BILL IN EQUITY, filed in the Superior Court on October 30, 1933, and afterwards amended.

From orders and decrees by *Williams,* J., the defendants appealed.

The case was submitted on briefs.

*D. H. Keedy & F. E. Tuit,* for the defendants Dailey & others.

*W. H. McCarthy & L. W. Doherty,* for the plaintiffs.

PIERCE, J. This bill of complaint, by amendment now entitled Alfred A. Beauregard & others *vs.* Roy M. Dailey & others, is brought by "owners of fleets of commercial trucks operating in the Commonwealth of Massachusetts and in adjacent States," to obtain injunctive relief against the defendant truck drivers' union, the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America Local 404, a voluntary unincorporated association located in Springfield, Massachusetts (hereinafter called the union) and against John F. Gatelee, alleged to be president of the Springfield Central Labor Union.

In substance the plaintiffs allege in said bill of complaint that on October 22, 1933, various members of the defendant union, employed by the plaintiffs, left their respective places of employment and went out on a strike because the employers refused to enter into an agreement whereby the employers should hire only union men; that on October 23, 1933, representatives of the plaintiffs and the defendant union, and a member of the "N. R. A. State board of conciliation" entered into an agreement for arbitration and the strike was declared off; that on October 26 and 27, 1933, the representatives of the plaintiffs met with the defendant Gatelee and the other representatives of the defendant union, in Boston, before the board of conciliation as provided in the agreement for arbitration; that at this meeting

the representatives of the plaintiffs declined to agree to the provisions of section 6 of said working agreement, which reads: "Relations. The Employer shall hire for work of this craft only members of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers in good standing, and if none are available then only those who are to become members at the next meeting of the Local, and when hiring extra equipment shall hire it only from truckmen who have an agreement with a Local Union of this Brotherhood. This provision shall apply particularly to a driver or helper on a vehicle who is the owner or part owner thereof"; that thereupon the defendant union refused to negotiate any further unless the plaintiffs would accept section 6, or a substitute for it which reads as follows: "When hiring labor the Employer shall have the right to decide upon the competency of the applicant and between applicants of equal competency will give preference to members of the local Union"; that it was then stated by the defendants' representatives that under the provisions of either section 6 or said substituted section the plaintiffs in the employment of truckmen should give preference to union men by notifying the union officials when additional truckmen were needed, and that in case the union could not furnish and supply competent help, the employer could secure the additional help from other sources; that the plaintiffs declined to accept such substitute section but wished to negotiate the questions of hours of labor, wages and working conditions; that the representatives of said union thereupon withdrew from further arbitration and refused to negotiate the remaining questions.

The bill further alleges, in substance, that on October 29, 1933, the defendant union, at a meeting held in Springfield, voted that the members leave their respective places with the plaintiffs and go out on strike, and that they went out on strike forthwith without notice to the plaintiffs; that they went out on strike for the purpose of enforcing acceptance by the plaintiffs of the provisions of section 6, above quoted, or of the substitute section, above quoted; and that a duly authorized representative of the defendant union so

stated to the plaintiffs on October 29, 1933.  The bill alleges that the strike is for the purpose of enforcing a closed shop upon the plaintiffs, and for that reason is illegal in its purpose.  The bill in general terms charges that the defendants have indulged in conduct intended by threats, intimidation and force on their part to induce employees of the plaintiffs to cease such employment, and thereby have seriously interfered with the carrying on of the business of the plaintiffs. The plaintiffs sought a restraining order and a temporary and permanent injunction to prevent further interference with the carrying on of their business.

To determine the questions argued by the parties it is necessary to examine somewhat closely the various precedent steps which were taken in the Superior Court, and which are shown by a copy of docket entries annexed to the printed record.  These entries disclose that on October 30, 1933, the bill of complaint was entered in the court, and that on the same day an order of notice to show cause, returnable November 2, 1933, and a subpoena, returnable December 4, 1933, issued and were served on certain of the defendants on October 30 and November 1, 1933.  They were never served on certain other of the named defendants.  On November 1, 1933, the case was removed to the United States District Court, on the ground that the bill showed a Federal question under the National Recovery Act, and it was remanded to the Superior Court for Hampden County on December 8, 1933.  On November 1 and 2, 1933, three papers were filed in behalf of the defendants. These papers, each entitled "Appearance," stated that the appearance was "special"; two of them added that the sole purpose of the appearance was to attack the restraining order and to oppose the temporary injunction; while the third paper recited a specific denial of the court's jurisdiction.  On November 2, 1933, a temporary injunction issued and also an interlocutory decree requiring that pleadings be completed by November 6, and that the suit proceed before a master, Edward Hutchings, under the usual rule of reference.

On November 6, 1933, all persons who were served with process appeared "specially and for the sole and only purpose" of taking exceptions (1) to the order of the court that the pleadings be completed by November 6, 1933, (2) to the order of the court referring the case to a master and (3) to the direction to the master that the hearings begin on November 8, 1933. On the same day the defendants served with process filed a paper entitled "Defendants' Protest Against Proceeding Further" on the ground that the court was without jurisdiction. By successive orders of the court, entered on November 6, November 8 and November 11, the time of the completion of the pleadings was extended, first to November 8, then to November 15, and finally to November 20. These orders were not excepted to by the defendants. On November 14, 1933, the defendants appeared "specially . . . for the sole purpose" of moving that the order requiring pleadings to be completed (1) by November 6, (2) by November 8 and (3) by November 15 be vacated as having been "made unlawfully and without jurisdiction."

On November 20, 1933, the defendants served, except Gatelee, appeared specially for the sole purpose of answering the bill of complaint, "not waiving exceptions heretofore taken to orders of the court shortening defendants' time for answer and expressly relying thereon; and protesting against being required to answer plaintiffs' bill of complaint" at that time. By their answer the defendants alleged, among other things, that the Motor Truck Association of Western Massachusetts, one of the named plaintiffs, was without legal entity and as such could not be made a party to the suit; and that for the same reason the union could not be made a party defendant. The answer denied that the strike was for an unlawful purpose, objected that some named defendants had not been served, and objected that the allegations of the bill relating to wrongful acts on the part of the defendants were too general. On November 21, 1933, the defendants appeared "specially for the sole purpose" of appealing "from the Interlocutory Decree en-

tered . . . on November 2, 1933," requiring pleadings to be completed by November 6, and ordering the suit to proceed before a master.

On November 23, 1933, on motion of the master the order of reference to the master was confirmed and hearings were ordered to begin on or before December 11, 1933. On December 11, 1933, the judge granted a motion by the master that the time for beginning hearings be extended to December 18, 1933. On December 15, 1933, the defendants appeared "specially and for the sole purpose" of moving "that the time for commencing the hearings before the master be extended to and including January 8, 1934." The motion was denied, and the defendants then filed a paper entitled "Defendants' Objections and Protest against Proceeding to Hearing before Master." The grounds of objection were (1) that "the time for them [the defendants] to appear and answer and otherwise plead to the Bill of Complaint has not yet expired," since the subpoena "commanded defendants to appear on the first Monday of December 1933 [December 4, 1933] . . . the return day of said subpoena which . . . entitles the defendant to appear and answer or otherwise plead to the plaintiffs' Bill of Complaint at any time within twenty-one (21) days after said first Monday of December, which time [December 26, 1933] has not yet expired"; (2) that "included in the answers which under objection and subject to exceptions the defendants have already filed there are matters in the nature of demurrer and pleas in bar which have not been heard and disposed of and which should be heard and ruled upon and disposed of by the court before hearings are held by the master"; (3) that the "Defendants object to Edward Hutchings, Esquire as master" on the ground that he was "disqualified . . . and not . . . a free and impartial judge" to hear the case, since at that time he was the attorney of record for one of the plaintiffs, namely, the Consolidated Motor Lines Incorporated, and was defending said plaintiff in actions of tort brought against it by third persons; and (4) that "the National Labor Board has taken jurisdiction of the controversy." These objections

were overruled. On December 26, 1933, more than a month after the date set for the completion of the pleadings, the defendants served filed a separate demurrer, plea and answer. On January 3, 1934, the day after the hearings before the master had been concluded, the plaintiffs moved to amend their bill by adding to the end of paragraph 8 additional allegations of acts of violence alleged to have been committed by members of the defendant union local 404, both before and after the filing of the bill of complaint. The defendants served with process appeared specially for the "sole . . . purpose . . . of objecting to and opposing the allowance of the plaintiffs' motion to amend their bill of complaint." On January 15, 1934, the plaintiffs' motion was allowed. On January 25, 1934, the defendants served with process filed an "Answer to Amendment to Bill of Complaint" in which they demurred, pleaded and answered specifically denying each and every allegation of violence set forth in the amendment.

The case was heard by the master on December 18, 19, 20, 21, 22, 26, 27, 28 and 29, 1933, and on January 2, 1934. At these hearings the defendants appeared specially to cross-examine witnesses. On March 5, 1934, the master filed his report with the defendants' objections appended. The report exonerated the defendant Gatelee and thereafter he made no further appearance in the case. The defendants' objections, among others, were as follows: (1) because the master was "disqualified . . . and . . . not a free and impartial judge of the defendants, their evidence and their cause," since the report showed that "the relation of attorney and client does and has obtained between said master and the plaintiff, Consolidated Motor Lines Incorporated" at the time of the hearings; (2) because, over the "objection and protest of these defendants . . . [the master] heard the case *ex parte* and without jurisdiction over the persons of these defendants; in that, the hearings were held before the expiration of the time limited, by the subpoena issued . . . and served on these defendants, for them to 'cause (their) written appearance to be entered, and (their) written answer or other lawful pleading' . . . to be filed in

the clerk's office"; (4) because "the master, over the objection and subject to the exception of the defendants admitted evidence of acts done, conduct engaged in and occurrences not alleged in the plaintiff's bill"; (5) "because the master over the objection and subject to the exception of the defendants, admitted evidence of facts not alleged in the plaintiff's bill and beyond its scope"; (6) "because the master admitted evidence of acts done, conduct engaged in and occurrences taking place after the filing of the bill without sufficient allegation thereof in the bill, or without amendment thereto, or without supplemental bill," as shown by the report and record; and (7) "because the master admitted evidence inconsistent with the requests of these defendants as set forth in the report." In his report the master stated that he had been retained by an insurance company to defend the Consolidated Motor Lines Incorporated, one of the plaintiffs, in two actions having no connection with the case in which he was sitting as master, and that he was then attorney of record for said Consolidated Motor Lines Incorporated.

The master found from the evidence that, both before and after the filing of the bill of complaint, members of the union had interfered with the movements of the plaintiffs' trucks and had intimidated the drivers of their trucks. After the confirmation of the master's report by interlocutory decree of the Superior Court, the trial judge in his findings and rulings stated that at the hearing before him on November 2, 1933, upon the question of the issuance of a temporary injunction, at which hearing all defendants served with process were represented, he, being unaware that the defendants had filed a special appearance, discussed in open court with counsel for the defendants the questions of the time of completion of pleadings and the referring of the cause to a master, and the attitude of the defendants' counsel and of Gatelee "gave the court reason to believe that the defendants so represented and so present in court assented to the order as to completion of the pleadings and the hearing of the case before a master on the date or dates set." He found "as a fact that the defendants theretofore served and present in

court either personally or represented by attorney assented to the court's orders and did not in any way bring to the attention of the court that they appeared specially or questioned the jurisdiction of the court to proceed as above set forth." Certain of the plaintiffs' requests were granted. By its final decree the court issued a permanent injunction. The case is before this court on the appeal of the defendants from the final decree.

The first contention relied on by the defendants is that the judge erred in entering orders for the completion of the pleadings at a date prior to that named in the subpoena. Their argument is that a judge is without power to order the pleadings to be completed otherwise than as stated in the subpoena, unless the defendant has entered a general appearance. The defendants, in support of their position, rely upon the intimation expressed in the note to Rule 2 of the Superior Court (1932), that it may be doubted whether "the court in its discretion may order or permit pleadings to be filed, or any act to be done, at other times than are provided in these rules," against a defendant who has not appeared and to whom Rule 25 gives twenty-one days after the return day for appearance. Assuming a general appearance to be necessary before the time for completion of the pleadings may be shortened, it may be doubted whether the defendants succeeded in doing more than raise a question, since no motion to dismiss or plea to the jurisdiction was made at the time; and whether the "special" appearances entered November 1 and 2, 1933, were not in the circumstances the equivalent of a general appearance. *Rollins* v. *Bay View Auto Parts Co.* 239 Mass. 414, 423. Compare *Walling* v. *Beers*, 120 Mass. 548, 550; *Wrinn* v. *Sellers*, 252 Mass. 423, 425. The finding of the trial judge that the defendants in open court had given him reason to believe that they were raising no objection to the procedure of the court is a conclusive answer to the defendants' contention. There is nothing in the record which is inconsistent with the trial judge's conclusion that the defendants' attorney impliedly assented to the time for the completion of the pleadings. The so called special appearances, filed November 1 and 2,

1933, which were not brought to the attention of the judge, stated no reason for a special appearance. Nor does the objection that the judge was without power to order that the pleadings be completed by November 6, 1933, appear to have been raised until November 6, 1933. Similar oral agreements made by attorneys in open court have been held enforceable. *Savage* v. *Blanchard,* 148 Mass. 348, 349. *Creed* v. *McAleer,* 275 Mass. 353, 364. In the circumstances here presented the power of the judge to shorten the time for the completion of the pleadings is unquestionable. Compare *Carleton* v. *Rugg,* 149 Mass. 550; *New England Oil Refining Co.* v. *Canada Mexico Oil Co. Ltd.* 274 Mass. 191, 198. See Rules 2 and 25 of the Superior Court (1932).

Another, and the principal argument relied on by the defendants, is that the case, over the defendants' objection, was referred to a master who by reason of interest, or because the relationship of attorney and client existed between him and one of the plaintiffs in the present suit, was disqualified to sit as master. It is to be observed in connection with this objection that the defendants did not remain silent until after the hearings had commenced before the master, but brought their objection to the attention of the master and the trial judge. See *Thomajanian* v. *Odabshian,* 272 Mass. 19, 23, and cases cited. The master stated in his report that he was at the time of the hearing the attorney of record for Consolidated Motor Lines Incorporated, one of the plaintiffs in the suit, but that the action in which he represented the corporation as attorney involved issues entirely disconnected from the case being tried before him. It is the familiar rule in this Commonwealth, embodied in art. 29 of the Declaration of Rights, that it is the right of every citizen to be tried by judges "as free, impartial and independent as the lot of humanity will admit," and this mandate is rigidly enforced. *Thomajanian* v. *Odabshian,* 272 Mass. 19, 23. *King* v. *Grace,* 293 Mass. 244, 246. Interest in the outcome of litigation is a familiar ground for disqualification, and such disqualification is not limited to judges but extends broadly to all persons authorized to decide the rights of litigants, this latter class includ-.

ing masters and auditors. *Williams* v. *Robinson,* 6 Cush. 333, 335. Similarly, bias or prejudice will disqualify a judge, master, auditor or juror. *Dittemore* v. *Dickey,* 249 Mass. 95, 99. *Thomajanian* v. *Odabshian,* 272 Mass. 19, 23, 24. It is the general rule in most jurisdictions that the relationship of attorney and client is ordinarily so close and confidential as to be incompatible with the principle that "no man can be at once the judge and attorney for one of the parties," *McGregor* v. *Crane,* 98 Mass. 530, 531; and this rule extends to cover cases where the judge is under a general retainer from one of the parties even though the retainer involved issues other than those to be determined in the pending litigation. *Kern Valley Water Co.* v. *McCord,* 70 Cal. 646. *Lux* v. *Haggin,* 13 Pac. (Cal.) 654. *Darling* v. *Pierce,* 15 Hun, 542, 548, 549. *Curtis* v. *Wilcox,* 74 Mich. 69, 74. *Moses* v. *Julian,* 45 N. H. 52, 57, 58. *Leonard* v. *Willcox,* 101 Vt. 195, 212. This general rule of attorney and client relationship is not applicable to an attorney for a party in past litigation involving issues entirely unrelated to pending issues, and in such case there is no disqualification. *The Richmond,* 9 Fed. 863, 864. *Carr* v. *Fife,* 44 Fed. 713, 715; affirmed 156 U. S. 494. *Harjo* v. *Chilcoat,* 146 Okla. 62, 67. In the case at bar the relationship of attorney and client unquestionably existed between the master and the plaintiff Consolidated Motor Lines Incorporated, although the attorney was furnished by a liability insurance company and the insurance company paid his fees. *Keenan* v. *Scott,* 64 W. Va. 137, 142. It could, therefore, readily be presumed that the relationship of attorney and client might influence consciously or unconsciously the action of the master. *Ledford* v. *Hubbard,* 236 Ky. 373, 375. It would seem in either view that the master was open to suspicion of such bias or prejudice, and under the high standards set by this court, and generally in other courts, he was disqualified to sit as a master. *McGregor* v. *Crane,* 98 Mass. 530. *Kern Valley Water Co.* v. *McCord,* 70 Cal. 646, 647. It follows, therefore, that the proceedings before the master were a nullity and his report could not be made the basis of a decree. *McGregor* v. *Crane,* 98 Mass. 530, 531,

The defendants have further contended in support of their appeal from the final decree that said decree was entered without hearing and decision on their demurrer. As above stated it appears that the defendants seasonably filed a paper entitled "Answer" in which are set forth matters in abatement, matters in the nature of demurrer, and matters in the nature of a plea. The separate plea, demurrer and answer filed by the defendants after the time named by the judge for the completion of the pleadings, and after the filing of the first answer, cannot avail the defendants, since it does not appear that they were filed by leave of court. See Rule 28 of the Superior Court (1932). The first answer contained special matter, however, in the nature of a plea and demurrer, and this answer will be considered as if such pleading had been separately filed. *O'Hare* v. *Downing,* 130 Mass. 16, 19, 20. *Parks* v. *Smith,* 155 Mass. 26, 30. *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 9. *Rothstein* v. *Commissioner of Banks,* 258 Mass. 196, 198. If the answer is considered as a demurrer, the defendants had no right to a decision thereon prior to the hearing of the case on the merits, discretion in that regard resting in the trial judge. *Pearson* v. *Mulloney,* 289 Mass. 508, 511, and cases cited. However, there was no waiver of their demurrer by the defendants and they had a right to a decision on their demurrer at some stage of the proceeding. Where a final decree is entered without such determination, this court ordinarily will consider the demurrer and plea, *DeVeer* v. *Pierson,* 222 Mass. 167, 174. Here, because there are no findings of a master which can be considered, and because of the amendment to the bill as to substance and parties on January 15, 1934, we think it is unnecessary to decide whether the demurrer and plea to the bill filed October 30, 1933, should be sustained, since that point may be considered in connection with facts presented at the rehearing. It is not necessary to speculate on questions which arose at the present hearing but may not arise before a new master on rehearing.

*Decree reversed.*