## NICHOLAS KOROBCHUK'S CASE.

Berkshire.     September 15, 1931. — December 28, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Workmen's Compensation Act*, Amount of compensation; Impartial physician; Procedure: objections, exceptions; Appeal; Costs.

Earning capacity for the purpose of computing compensation for partial incapacity under G. L. c. 152, § 35, is to be measured by the amount the employee is capable of earning after his injury and not by what he actually earns.

While, in the record before this court upon an appeal by an insurer from a final decree of the Superior Court awarding to a claimant a certain amount as compensation for partial incapacity, there were state-

ments of both the single member and the Industrial Accident Board indicating that they improperly disregarded the fact that it was not actual earnings but earning capacity after the return to work which was to be considered, nevertheless, since the board's decision contained statements to the effect that "his [the employee's] ability to earn wages" was in fact fairly represented by his actual wages, and that "the sums which he has been able to earn" since he returned to work were shown by what he actually received, and it did not appear that the question as to the proper rule to apply was brought to the attention of the board, it was *held,* that the record showed that it was found by the board that the employee's actual wages after the injury were the wages he was "able to earn thereafter," and that no error appeared.

It *seems,* that a surgeon who has operated upon a claimant under the workmen's compensation act cannot be an impartial physician within the meaning of G. L. c. 152, § 9.

The general rule with reference to exceptions should be followed in hearings before the Industrial Accident Board and, if a party intends to rely on an objection taken, he should save an exception. Per CARROLL, J.

A mere objection to the admission of certain evidence at the hearing of a claim under the workmen's compensation act by a single member of the Industrial Accident Board, if not followed by an exception, does not bring the propriety of the admission of the evidence to this court upon an appeal from a final decree of the Superior Court awarding compensation as found by the Industrial Accident Board and the single member.

*Whether* St. 1930, c. 208, is constitutional, was not determined.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

In the Superior Court, the case was heard by *W. A. Burns,* J. From a final decree awarding compensation, the insurer appealed.

*T. N. Foynes,* for the insurer, submitted a brief.

*J. M. Rosenthal,* for the claimant.

CARROLL, J. The employee was injured October 15, 1929, while at work on a heavy punch press, and was paid compensation under the workmen's compensation statute for the loss of the terminal phalange of the forefinger, the entire terminal phalange and half of the second phalange of the second and ring fingers, and the entire terminal phalange of the little finger of the left hand. He returned to work on a light punch press December 16, 1929. It was found

that the employee was partially incapacitated and unable to do the work he did before he was injured because of the condition of his left hand; that there was a "material decrease in gripping and working power." He was awarded partial compensation of two thirds of the difference between his average weekly wages before his injury and the wages he was able to earn after the injury.

There was evidence to warrant the finding of the Industrial Accident Board. The board in determining the weekly wages the employee was able to earn after the injury apparently found that the wages he actually received after the injury, as shown by the wage schedule, were in fact the weekly wages he was able to earn. There was no error in this if his actual wages after the injury were the wages he was able to earn.

Under the statute, G. L. c. 152, § 35, it is not the wages actually earned after the injury that are the basis of deciding the earning capacity. If conditions other than his injury, such as depression in business or other causes, prevented the employee from earning more wages, these facts are to be taken into account, and the partial compensation in all cases is to be measured by the amount the employee was capable of earning and not necessarily by what he actually earned. In other words the compensation is not to be awarded if the employee is idle because there is no demand for labor; he is to be paid for the loss of earnings caused by the injury and not for loss of earnings caused by the business depression. *Durney's Case*, 222 Mass. 461. *Capone's Case*, 239 Mass. 331. *Johnson's Case*, 242 Mass. 489. *Driscoll's Case*, 243 Mass. 236.

The employee testified that he is now working "four days a week, nine and one half hours a day. The reason that he does not work forty-seven and one half hours now is because there is no work for him, and that is generally so at the plant"; that before the injury he worked sixty hours a week, "but he does not think he could do that now, because the left hand is weak altogether."

There are statements of both the single member and the board in the report indicating that they did not adopt the

correct rule and that they disregarded the fact that it was not actual earnings but earning capacity after the return to work which was to be considered. On the other hand, we think the report shows that it was found that his actual wages after the injury were the wages he was "able to earn thereafter." This is shown by the decision of the board to the effect that "his ability to earn wages" was in fact fairly represented by his actual wages, and the statement that "the sums which he has been able to earn" since he returned to work are shown by what he actually received. We cannot say that there was error of law in the conclusion of the board. It may have been that, notwithstanding the employee's own evidence, his actual wages were the wages he was able to earn, not because of the lack of demand for labor, but merely because of his incapacity; that he did not earn more solely because of his injuries. It does not appear that this question was brought to the attention of the board, and on this record we cannot say that the method followed by the board was wrong.

Under G. L. c. 152, § 9, the report of a duly qualified impartial physician appointed by the Industrial Accident Board may be received in evidence. Under this statute the report of Dr. Bard was received in evidence at the hearing before the single member. The insurer contended that Dr. Bard was not an impartial physician, but was partial because he operated on the employee's fingers. We understand from the testimony of the employee that Dr. Bard operated on him for the injuries received on October 15, 1929. If this testimony were believed Dr. Bard was not an impartial physician within the meaning of G. L. c. 152, § 9. But the insurer did not except to the admission of the report of Dr. Bard; it did object, however. We think the general rule with reference to exceptions should be followed in a hearing in industrial accident cases and if a party intends to rely on his objection he should save his exception. For this reason we do not think the insurer's mere objection to the admission of the report of Dr. Bard is before us. *Pigeon's Case*, 216 Mass. 51. *Ogden* v. *Aspinwall*, 220 Mass. 100, 103. Furthermore, it does not appear

that this point was brought to the attention of the board when it was hearing the case on review.

The board, acting under St. 1930, c. 208, assessed costs of $50 against the insurer "to cover the cost to the injured employee of this review, including reasonable counsel fees." The constitutionality of this statute has not been considered as the question is not argued by the insurer.

*Decree affirmed.*