MICHAEL LATORRE'S CASE.

Suffolk. November 16, 1938. — December 28, 1938.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Workmen's Compensation Act*, Industrial disease referees.

A physician, selected by the Industrial Accident Board under the provisions of § 9B added to G. L. (Ter. Ed.) c. 152 by St. 1935, c. 424, as a member of a board of industrial disease referees, was not "impartial," as required by the statute, with respect to the case of a claimant at the request of whose family physician he had taken X-ray photographs which resulted in the family physician's changing his previous diagnosis.

If one of a board of industrial disease referees, purported to be appointed by the Industrial Accident Board under the provisions of § 9B, added to G. L. (Ter. Ed.) c. 152 by St. 1935, c. 424, was not impartial as to a case being considered by them, they did not constitute a board of the character required by the statute and their report, even though unanimous, ought not to have been considered by the Industrial Accident Board.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board.

By order of *Burns*, J., a decree was entered in accordance with the decision certified. The insurer appealed.

It appeared that the report by the physicians appointed by a single member of the Industrial Accident Board as industrial disease referees, referred to in the opinion, was unanimous.

The case was submitted on briefs.

*J. J. Connors & E. B. Cass*, for the insurer.

*Nicholas Fusaro & Nunziato Fusaro*, for the claimant.

RONAN, J. This is an appeal from a decree of the Superior Court awarding compensation to an employee under the workmen's compensation act. The employee had worked steadily for twenty-three years for the subscriber,

and, although he did various kinds of work in a coal yard, he was usually engaged in filling coal bags. He contended that he was incapacitated from further work by reason of pneumonoconiosis caused by the inhalation of coal dust. The single member of the Industrial Accident Board, acting under G. L. (Ter. Ed.) c. 152, § 9B, appointed three physicians as industrial disease referees, who filed a report that the employee was suffering from pneumonoconiosis. The insurer objected to the admission of this report on the ground that one of the physicians, before his appointment as referee, had made an X-ray examination of the employee at the request of the employee's physician. The single member ruled that this did not prevent the physician from being impartial, and accepted the report. He then ruled that the finding of the three physicians was binding on the parties; that such finding established the fact that the employee was suffering from pneumonoconiosis; and that he would confine the hearing to a determination of the employee's disability and its cause and whether pneumonoconiosis was causally connected with the claimant's employment. The insurer offered the testimony of an expert in diseases of the chest, an expert in internal medicine, and an expert in roentgenology, all of whom testified that the employee did not have pneumonoconiosis. The roentgenologist also testified that he had examined the X-ray plates taken by one of the physicians who signed the report and testified that they did not show the presence of pneumonoconiosis. All such evidence was excluded on the question of the presence of this disease, but was accepted on the issue of the employee's disability. Such evidence, however, had no force or effect because the experts' conclusion that he was not disabled was based entirely on the ground that he did not have the disease in question. The absence of the disease could not be shown under the ruling made by the single member. The reviewing board affirmed and adopted this ruling and the decision of the single member.

G. L. (Ter. Ed.) c. 152, was amended by St. 1935, c. 424, by inserting a new § 9B which provided that the board of registration in medicine should prepare a list of registered

physicians and the Industrial Accident Board should select three physicians to whom it should submit claims for compensation for alleged injury due to an industrial disease. These three physicians "shall be impartial. Such three physicians shall be known as industrial disease referees. . . . The diagnosis shall be made by a majority vote of the referees, and shall be included in the decision of the single member and in the decision of the reviewing board, and such diagnosis shall be binding on the parties . . . ." See St. 1938, c. 462.

There was error in ruling that the physician who acted as one of the referees was impartial. He had taken X-rays of the employee, who had been referred to him by his family physician. There is nothing in the record indicating whether or not he had secured a medical history from either the family physician or the employee, but it does appear that after the family physician saw the X-ray plates that were taken he changed his previous diagnosis of acute bronchitis and "with the aid of the roentgenologist the supplemental diagnosis of pneumonoconiosis was made." The X-ray plates which were taken by the referee previous to his appointment were used at the hearing before the single member, and there were contrary opinions expressed by various experts as to whether or not they showed that the employee had pneumonoconiosis. The Legislature never intended that such a referee should act in a dual capacity. The evidence adduced by the insurer tended to show that one supposed to be impartial was mistaken in thinking that the X-ray plates showed the presence of this disease; and yet such evidence could have no probative effect simply because the one who took the X-ray plates afterwards became an industrial disease referee on the same case. Such a circumstance was utterly inconsistent with the requirements of plain justice and the demands of a full and fair hearing of an important issue of fact. In *Korobchuk's Case*, 277 Mass. 534, 537, concerning a physician who had operated on the employee's fingers, it was said that "If this testimony were believed Dr. Bard was not an impartial physician within the meaning of G. L. c. 152,

§ 9." It may be that the physician was constant in his belief that the employee had the disease in question and that he was not conscious of any bias or prejudice; but one occupying a position, the duties of which in some respects resemble judicial functions, must avoid even the appearances of partiality or of interest. *Dittemore* v. *Dickey*, 249 Mass. 95, 99–100. *Thomajanian* v. *Odabshian*, 272 Mass. 19, 23. *King* v. *Grace*, 293 Mass. 244, 247. *Beauregard* v. *Dailey*, 294 Mass. 315, 324. "But the relation of a physician to his patient is necessarily one of trust and confidence," *Butler* v. *Gleason*, 214 Mass. 248, 251; *Holbrook* v. *Seagrave*, 228 Mass. 26, 30, and that relation disqualifies him from acting as a referee upon the same issue that he has previously determined as a private physician. The report of the referees is given high evidentiary value by the statute, which provides that it shall be binding on the parties, and no one ought to act as a referee if he has had a previous professional connection with the case.

We are not impressed with the contention that the diagnosis of the referees should be upheld as a majority report. The statute, St. 1935, c. 424, provides for the selection of physicians by a State board and the appointment by another board of three physicians who have been so selected, to act as industrial disease referees upon a case which is then pending before the latter board. The parties have no voice in their initial selection or in their final appointment. As a further safeguard to prevent the appointment of one ineligible to act, the Legislature expressly prescribed that they "shall be impartial." The case is distinguishable from those where a party has the right to name his representative upon a board of arbitration and where "it is not uncommon . . . for each party to choose a neighbor and friend who is understood to have some previous knowledge of the matter in dispute" and where due allowances are made for minor irregularities in upholding reports made by boards so constituted. *Morville* v. *American Tract Society*, 123 Mass. 129, 140. *Farrell* v. *German American Ins. Co.* 175 Mass. 340. But even in such cases, the *ex parte* reception of evidence by the arbitrators has been sufficient cause

to reject their report. *Conrad* v. *Massasoit Ins. Co.* 4 Allen, 20. *Hills* v. *Home Ins. Co.* 129 Mass. 345.

The medical referees did not constitute the statutory board to which the parties were entitled and their report ought not to have been considered by the single member or the reviewing board. *Berninger's Case,* 253 Mass. 52. *Korobchuk's Case,* 277 Mass. 534.

The decree in the opinion of a majority of the court must be reversed.

*Ordered accordingly.*