MULCAHY & DEAN, INC. *vs.* CONSTANCE E. HANLEY & others.

Essex.   October 5, 1954. — February 9, 1955.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN,. JJ.

*Equity Pleading and Practice,* Master: qualification.  *Landlord and Tenant,* Waiver of breach, Succeeding landlord, Termination of lease, Construction of lease, Repairs.  *Waiver.  Equity Jurisdiction,* Forfeiture.

Equity would relieve against a forfeiture of a leasehold estate for failure by the lessee to pay when due an increase in the rent provided for in the lease where such failure was the result of mutual oversight of the lessor and the lessee and the arrearage was subsequently paid in full. [234]

There was no error in the denial of a motion that a master's report in a suit in equity brought by a corporation be discharged on the alleged ground of bias on his part where, although a cousin and law office associate of the master was one of three trustees managing an estate of which the wife of the owner of half the stock of the plaintiff was the beneficiary, the master never had any interest in his cousin's practice and apparently had no interest in the result of the suit.   [235]

A breach of a covenant in a lease through an underletting of a part of the demised premises without the written consent of the lessor required by the lease was waived by the lessor's continuing to accept rent from the lessee without objection to the underletting after he had learned of it.   [235–236]

A breach by a lessee of a hotel of his covenant in the lease to make all "necessary repairs . . . including any replacements whatsoever" was

---

not shown where it appeared that nearly eight years after the lease-hold began it was found that the hotel had bulged, that severe storms then did it further damage and it was in a dangerous condition, that the lessor then paid a substantial amount to rebuild the hotel in the belief, shared by the lessee, that the lease did not require the lessee to rebuild it, and that the lessor never made any demand on the lessee respecting the matter. [236]

An attempted termination of a lease of a hotel by a devisee of the lessor on the ground of the lessee's failure during the last few years of the lessor's life to perform a covenant in the lease to pay the lessor increases in taxes assessed on the property as a result of structures built by the lessee was ineffective where it appeared that the lessee was not sent the tax bills, that the devisee never asked the lessee to pay any taxes, that about a year after the lessor's death and after receiving notice of the attempted termination of the lease from the devisee the lessee paid the full amounts of such increases in taxes, and that no prejudice resulted from the failure to pay them earlier. [237]

BILL IN EQUITY, filed in the Superior Court on March 6, 1953, against Constance E. Hanley and the executors of the will of Edward D. Hanley to have a purported termination by the defendant Constance E. Hanley of a lease to the plaintiff from Edward D. Hanley declared void and the lease declared to be in full effect.

The suit was referred to a master. By order of *Morton,* J., there were entered interlocutory decrees denying a motion by the defendant Constance E. Hanley to discharge the master's report, and confirming the report; and a final decree granting the relief sought by the plaintiff. The defendant Constance E. Hanley appealed from all the decrees.

*Stuart C. Rand,* (*Jerome E. Andrews, Jr.,* with him,) for the defendant Constance E. Hanley.

*Claude B. Cross,* (*Gael Mahony* with him,) for the plaintiff.

LUMMUS, J. The facts appear in a master's report, which was confirmed. On November 25, 1942, the late Edward D. Hanley leased to the plaintiff for the term of twenty years the Normandy Hotel at Salisbury Beach and its subordinate buildings, at a rental of $5,300 a year for the first eight years and $6,000 a year for the remainder of the term. The lessee covenanted that it "will not assign this lease nor underlet the whole or any part of the said premises without first obtaining on each occasion the consent in writing of the lessor."

The lessee covenanted that it "will make all outside and inside repairs to the building, the lessor being under no obligation to make any repairs, it being expressly understood that the lessee takes over all the buildings as they are now and any necessary repairs to said buildings including any replacements whatsoever must absolutely be made by the lessee from the date hereof." The lease provided that upon failure by the lessee to perform any of its covenants or agreements the lessor might enter and repossess the leased property and expel the lessee.

On April 12, 1952, Edward D. Hanley died, and by his will devised the leased property to his daughter Constance E. Hanley. On February 27, 1953, Constance E. Hanley notified the lessee that "because of your [its] breach of the covenants and terms of the lease" in that it "failed to pay the rent reserved in said lease in the amounts and on the dates therein provided, and by every other right," she entered on the premises and repossessed the same and terminated the lease. The master found that when the rent was due to increase on November 25, 1950, the increase was not paid because of the mutual oversight of the plaintiff and Edward D. Hanley. But the plaintiff has paid the arrearages into court for 1951 and 1952, so that no defendant has been prejudiced. Even if the failure to pay the increased rent had been intentional, equity would have relieved against a forfeiture. *Finkovitch* v. *Cline*, 236 Mass. 196, 199. *Judkins* v. *Charette*, 255 Mass. 76, 83.

The defendant Constance E. Hanley attacks the competency of the master to act as such. Impartiality is as necessary to a master as to a judge. *Beauregard* v. *Dailey*, 294 Mass. 315, 325. See also *Latorre's Case*, 302 Mass. 24, 27. The counsel for the defendant Constance E. Hanley first suggested the name of the master and all parties agreed to his appointment. An attorney for the defendant Constance E. Hanley made affidavit that the master was considered reliable and impartial by his associates in the firm of which the attorney was a member. It appeared that John C. Reardon, Esquire, had an office in the same suite occupied

by the master in Lawrence, and that Mr. Reardon formerly made out tax returns and certificates of condition for the plaintiff. But as soon as that fact was disclosed, counsel for all parties waived any objection on that account. It also appeared that James A. Donovan, Esquire, a cousin of the master, occupied an office in the same suite. He is one of three trustees of the Pratt estate, the beneficiary of which is the wife of the owner of half the stock of the plaintiff. The master appears to have no interest in the result of the case. He never had any interest in Mr. Donovan's practice. In the defendant Constance E. Hanley's brief she admits that there was evidence at the hearings that Mr. Donovan was trustee of the Pratt estate for the wife of the owner of half the stock of the plaintiff. That defendant knew all except that Mr. Donovan was a cousin and office associate of the master. We think that error has not been shown in the denial of the motion of the defendant Constance E. Hanley that the master's report be discharged because of the alleged bias of the master.

The master ruled that the defendant Constance E. Hanley, in her attempted termination of the lease on February 27, 1953, relied only on nonpayment of rent for 1952. But the terms of her notice of termination do not support that finding. She relied also on "every other right." *Markey v. Smith,* 301 Mass. 64, 73–74. The lease required written consent of the lessor to any underletting of the whole or any part of the leased premises. Without obtaining any such consent, the plaintiff on June 2, 1950, leased to Mr. and Mrs. John Walsh the rooms on the second and third floors of the hotel, starting June 2, 1950, at a rental of $3,200. That lease was renewed for the 1951 and 1952 seasons. The master found that Edward D. Hanley, by receiving rent, waived that breach of covenant until his death on April 12, 1952. *Saxeney v. Panis,* 239 Mass. 207, 210. In this connection the question is whether the lease to the Walshes for the summer of 1952, in breach of the lease, was cured by the waiver of Edward D. Hanley in his lifetime. By the original lease to the Walshes for the season of 1950, they were given

a right of renewal for the season of 1951, to be exercised before January 1, 1951. The master found that a similar arrangement was made for the 1952 summer season. It is highly probable that it was made before January 1, 1952, during the lifetime of Edward D. Hanley, who continued to receive rent and so far as appears never objected to the last transaction with the Walshes any more than he had to the earlier ones. Besides, a succeeding landlord cannot take advantage of a breach which occurred before he acquired title. *Trask* v. *Wheeler,* 7 Allen, 109. *Haymarket Realty Co.* v. *Sullivan,* 249 Mass. 262, 266.

The lease provided that the lessee "will make all outside and inside repairs to the building, the lessor being under no obligation to make any repairs, it being expressly understood that the lessee takes over all the buildings as they are now and any necessary repairs to said buildings including any replacements whatsoever must absolutely be made by the lessee from the date hereof." When the leasehold began, the master found that extensive repairs were necessary, which were made by the plaintiff. But in September, 1950, it was found that the hotel had bulged. Severe storms in the fall of that year did further damage. Edward D. Hanley paid more than $34,000 to rebuild the hotel, which had come to be in a dangerous condition. The master found that when Edward D. Hanley rebuilt the hotel, although he was ninety-three years old, he was mentally alert and supervised his very extensive real estate interests. He found that Edward D. Hanley was of opinion that the plaintiff was not required by the lease to rebuild the hotel, and that the plaintiff did not suggest or influence that opinion. That seems to have been the opinion of the plaintiff as well. It does not appear that Edward D. Hanley ever changed his opinion or made any demand upon the plaintiff. His opinion was in accord with the practical construction put upon the lease by both the parties to it. *Ovans* v. *Castrucci,* 267 Mass. 600, 605. *Canadian Club Beverage Co.* v. *Canadian Club Corp.* 268 Mass. 561, 569. *Rooney* v. *Weeks,* 290 Mass. 18, 28. *LaCouture* v. *Renaud,* 325 Mass. 33, 36. Even if

there was a breach of the plaintiff's covenant to repair, Constance E. Hanley cannot now take advantage of it. *Trask* v. *Wheeler*, 7 Allen, 109. *Haymarket Realty Co.* v. *Sullivan*, 249 Mass. 262, 266.

The plaintiff covenanted that it would pay "all increase in taxes that may be assessed by reason of any improvements or alterations of the property made by the lessee." The master found that the plaintiff built structures which increased the taxes in the amount of nearly $400 in the years from 1947 to 1952 inclusive. But the master found that the plaintiff was not sent the tax bills, that the defendant Constance E. Hanley never asked the plaintiff to pay any taxes, that on May 13, 1953, the plaintiff paid the defendants in full the amount of such additional assessments, and that the defendants have not been prejudiced by the failure to pay them earlier.

We do not find any error prejudicial to the defendant Constance E. Hanley, who is the only appellant, shown by her exceptions to the master's report, or by the confirmation of that report. The final decree giving relief to the plaintiff with costs is supported by the findings of the master. The interlocutory decree confirming the master's report and that denying the motion to discharge the report are affirmed, and the final decree is affirmed with costs of the appeal.

*So ordered.*