Coven, J.
This appeal arises from a judgment entered in favor of Clarendon Hill Somerville, LP (“Clarendon”) and FHRC Management Corporation (“FHRC”), Clarendon’s management agent (collectively, “plaintiffs”), in their summary process action against Kenneth Biagioni (“defendant”) for nonpayment of rent for residential premises subsidized under a Federal project-based Section 8 program. The defendant argues that the trial judge erred in finding for the plaintiffs for possession and in dismissing his counterclaims. Specifically, the defendant argues that the trial judge erred (1) in calculating the amount of rent owed; (2) in not finding that the plaintiffs violated G.L.c. 93A for the actions relating to rental charges; (3) in finding *182 that the plaintiffs did not commence the summary process action in retaliation for him filing a complaint with the Attorney General; and (4) in not exercising equitable authority to prevent forfeiture of the residence.
We summarize the relevant findings of the trial judge’s extensive findings and rulings, reserving further details for discussion of the issues raised. The defendant resides in a one-bedroom apartment within the Clarendon Hill Towers apartment complex, which consists of 501 residential units in three buildings. The defendant’s apartment is subsidized under the Federal Section 8 rental subsidy program. Under this program, a tenant’s monthly rent is 30% of his adjusted income or a minimum of $25.00, whichever is greater, and the balance of the rent is paid through the program to the owner. The program does allow for the waiver of the minimum rent where that minimum rent will pose a hardship.
The defendant has resided in the apartment since 2005 and had previously resided in the complex since 1998 with his mother. The defendant was elected to the Clarendon Hill Towers Tenants Association, Inc. (“CHTTA”) in 2008 and was appointed president of the board of directors of the CHTTA in August, 2009.
On April 9, 2010, Clarendon purchased the complex from CHTTA, and on that date, the defendant and the plaintiffs entered into a rental occupancy agreement for a one-year term that would automatically renew at the end of the term unless terminated by the defendant. The defendant was responsible for $369.00 of the $1,285.00 monthly rent. A tenant’s rent responsibility is determined through a certification process. The plaintiffs are required to recertify, annually, each Section 8 tenant’s income for the purpose of adjusting the rent as of the tenant’s anniversary date, which for the defendant was July 1.
The defendant’s rent obligation was adjusted for the months of May, 2010 through September, 2010 to $25.00 per month because of a change in his income from unemployment benefits. It was not disputed at trial that the defendant was properly charged $369.00 in October, 2010. The judge found that on November 1, 2010, the defendant’s rent was reduced to $25.00 per month because the defendant’s unemployment benefits were scheduled to end.
In the 2011 recertification process, the defendant reported receiving $263.00 in unemployment benefits. The plaintiffs learned, however, that the defendant had been receiving $309.00 in unemployment benefits from March 27 to September 18, 2010 and had received unemployment extension benefits from September 25, 2010 that would end in mid-July of 2011.
The trial judge found that on July 7, 2011, the plaintiffs mistakenly calculated the defendant’s rent at $25.00 per month, and on July 28,2011, they entered into a lease addendum indicating that the defendant’s rental obligation would be $25.00 per month effective July 1, 2011. On September 19, 2011, the defendant met with the plaintiffs, and the plaintiffs retroactively increased the defendant’s rent for the months of April, May, and June of 2011 to $342.00 because of the defendant’s receipt of unemployment extension benefits. Effective July 1, 2011, the defendant’s rental obligation was determined to be $402.00 per month, but through a letter sent to the defendant by the plaintiffs in September, 2011, the defendant would not be required to pay the rent increase to $402.00 until November, 2011. In November, the defendant provided the plaintiffs with a letter from the Massachusetts Division of Employment and Training showing that his unemployment benefits had ended. The *183 defendant claimed no other income, and the parties came to an agreement that effective November, 2011 through the next recertification process, the defendant’s rent obligation would be $25.00 per month.
The trial judge found that the parties were not disputing that the minimum rent for the months of November, 2011 through July, 2012 was $25.00 per month. And it was found that from May, 2010 to November, 2011 when the defendant was paying $25.00 per month, the defendant had the ability to pay at the minimum rental rate charged. The judge found that as of November 1, 2011, the defendant had lost his unemployment extension benefits and the rent was correctly established at $25.00 per month.
At no time prior to September, 2012 did the defendant request a hardship exemption to the payment of rent, nor did the plaintiffs inform the defendant of a possibility of a hardship exemption. On September 25, 2012, the defendant, through counsel, claimed that he was entitled to a hardship exemption that would exempt him from paying the $25.00 minimum rent. The defendant claimed that he was eligible for a hardship exemption because he had lost his unemployment benefits and could be evicted if he were unable to pay the minimum rent. The defendant’s request was denied on October 4, 2012. The plaintiffs determined that the defendant’s request was not applicable. The trial judge made a specific finding that, at the time of the trial, the defendant had the current ability to pay at least the $25.00 minimum rent and had had the same ability for past months “and did not qualify for a financial hardship exemption from payment of $25.00 as his rent.”
At trial, the plaintiffs claimed a rent arrearage of $2,114.94 through the February, 2013 trial date. In addition, the plaintiffs sought an additional rent arrearage of $1,671.41 that had accumulated prior to Clarendon’s purchase of the premises and for which the plaintiffs argued an assignment of the obligation. In the notice to quit for nonpayment of rent that was served on the defendant on June 20,2012, the plaintiffs claimed a rent arrearage in the amount of $3,732.94 through July, 2012.
On June 26,2012, the defendant requested an informal meeting with the plaintiffs’ property manager to discuss the notice to quit. A policy had been in place through which the plaintiffs would not pursue rent arrearage, as a “professional courtesy” against the defendant or other board members, but the plaintiffs had discontinued the policy. At the meeting, an agreement was reached through which the defendant, in addition to his monthly rent obligation, would pay an additional $75.00 per month toward the arrearage.
In September, 2012, the defendant applied for Social Security benefits. The application was denied, and the defendant appealed. The appeal had not been decided at the time of trial. The defendant claimed at trial that he subsisted on $200.00 per month in food stamps, credit cards, and periodic cash gifts from his family. The judge found that the defendant had no utilities or telephone expenses, but that he owned three motor vehicles that cost him $75.00 to $80.00 per month for insurance and $10.00 to $20.00 per month in fuel expenses.
Additionally, the court found that in August, 2012, the defendant had taken a one-week trip to Myrtle Beach, S.C., for a vacation with a friend, traveled by motor vehicle, and expended several hundred dollars in fuel costs. The court credited testimony from the plaintiffs’ property manager that the defendant had previously disclosed to that person that he owned the time-share residence where they had stayed. The *184 Mend with whom the defendant traveled also testified that the defendant claimed ownership in the time-share. The defendant testified that he used money from his tax return and received a loan from his mother to finance the trip.
On August 17, 2012, the defendant, through an e-mail addressed to the plaintiffs’ property manager, informed the plaintiffs that he was filing a complaint with the civil rights division of the Massachusetts Attorney General’s office. The complaint was received by the Attorney General on August 29, 2012, in which it was alleged that CHTTA should have control over the properly and not the plaintiffs because it owned a 51% interest in the property. On August 30,2012, the defendant was served with the summary process complaint in this action.
Hardship exemption. The minimum contribution to rent of an apartment at the plaintiffs’ complex under the Section 8 program is $25.00 per month. 42 U.S.C. §1437a(a)(3)(A)(ii); 24 C.F.R. §5.630 (a) (3). The Section 8 program does, however, provide for a hardship exemption to the minimum payment. Section 1437a(a) (3) (B) (i) of 42 U.S.C. provides, in relevant part, as follows:
[A] public housing agency... shall immediately grant an exemption from application of the minimum monthly rental... to any family unable to pay such amount because of financial hardship, which shall include situations in which (D the family has lost eligibility for or is awaiting an eligibility determination for a Federal, State, or local assistance program...; (ID the family would be evicted as a result of the imposition of the minimum rent requirement ...; (HD the income of the family has decreased because of changed circumstance, including loss of employment; (IV) a death in the family has occurred; and (V) other situations as may be determined by the agency....
The defendant argues that this Federal statute and corresponding regulation, see 24 C.F.R. §5.630(b)(1) (tracking statute), required the plaintiffs to waive the $25.00 minimum rent whenever a tenant loses his unemployment benefits or is awaiting a determination of Social Security benefits. The defendant further argues that under the plain language of the statute, the plaintiffs had no discretion to consider any other factor, i.e., an ability of the defendant to make the $25.00 minimum monthly rent payment, once the defendant demonstrated that he lost his unemployment benefits and was awaiting a determination on his application for Social Security benefits.
The term “assistance program” is not defined, and we accept, for the purposes of review, the defendant’s broad construction of the term, as it relates to housing, that unemployment benefits and Social Security benefits would fall within the definition of “assistance program,” and the loss of those benefits would trigger 42 U.S.C. §1437a(a)(3)(B)(i). But see 42 U.S.C. §1437f (discussing authorization for Federal funds to be paid to housing programs for tenant assistance). Yet, even to accept this construction, we do not accept the defendant’s argument that the plaintiffs can look only to the loss of income and make no other inquiry. A statute should not be construed in a way that produces absurd or unreasonable results when a sensible construction is readily available. Manning v. Boston Redev. Auth., 400 Mass. 444, 453 (1987). The defendant’s construction overlooks the language that introduces the statutory examples of events that may cause financial hardship: the housing authority “shall immediately grant an exemption from application of the minimum month *185 ly rental... to any family unable to pay such amount because of financial hardship.” §1437a(a) (3) (B) (i). The statute itself makes the allowance of the exemption dependent upon an “ability,” or lack thereof. This inquiry into ability is also reflected in the hardship exemption for persons who “would be evicted as a result of the imposition of the minimum rent requirement.” Id. It would not be possible to make a determination into a tenant’s eligibility for an exemption due to this reason .unless an inquiry into the tenant’s ability was conducted. The defendant’s construction would allow any tenant to claim a hardship exemption even in circumstances where the tenant would experience no financial hardship. We also reject a construction of the statute that would require a housing authority to waive the minimum rent for a tenant merely because it was aware that that tenant had lost unemployment benefits or was denied Social Security benefits, regardless of whether the tenant requested the exemption. If we were to adopt such a construction, a tenant who would not suffer a hardship would receive an unwarranted financial benefit that was not requested and place an unwarranted burden on the public finance of tenant subsidized housing.
In this case, the trial judge made a finding that the defendant did not lack an ability to pay the $25.00 minimum monthly rent. The judge found that the defendant had the ability to make the minimum monthly payment and did not qualify for a hardship exemption.[2] Although the plaintiffs sought eviction for nonpayment of rent, the nonpayment of rent was not brought about by an inability to meet the minimum month *186 ly payment of rent. This is not a case where the defendant would be entitled to the waiver of the minimum monthly rent because he could “be evicted as a result of the imposition of the minimum rent requirement.” Id.
Rent. The trial judge ultimately determined that the defendant owed the plaintiffs a rent arrearage in the amount of $1,947.94. This figure was calculated by adding the total amount of payment that the judge found due following the plaintiffs’ purchase of the properly through June, 2013, the month the judge issued his finding following the February, 2013 trial. The amount owed for this period was $3,413.00.[3] The trial judge subtracted from this amount $1,538.06, the amount that the defendant paid during this period. The difference is $1,874.94. Although there appears to be a discrepancy in the trial judge’s findings and calculation of damages, the issue that we address is whether, as claimed by the defendant, the trial judge erred in determining that for the months of July through October, 2011, the defendant owed $342.00 per month.
It is unclear whether it was error for the judge to have included this monthly rental amount for this period of time in the calculation of damages. The plaintiffs, when they discovered error in the calculation of monthly rental charges during the July, 2011 recertification process, explicitly stated that the increase in rent would not go into effect until November, 2011.[4] It is an open question of fact for the trial judge to determine whether this constituted a waiver of the rental increase for the months of July through October, 2011 or whether the plaintiffs were simply deferring the rental obligation to a later time without actually waiving the amount claimed to be owed by the defendant.
It was also error to have awarded rent damages for the months after the trial ended. There was no evidence offered to support the defendant’s nonpayment of rent for these months.[5]
G.L. c. 93A. The defendant argues that the trial judge erred in not finding that the failure of the plaintiffs to waive the minimum rent of $25.00 per month or notifying the defendant of his right to request a hardship waiver constituted a violation of G.L.c. 93A. The defendant also argues that it was error for the trial judge not to have found a violation of G.Lc. 93A where the plaintiffs sought to collect rent that was not owed[6] and misled the defendant as to the amount owed by referencing in the summary process complaint three different amounts of rent owed and, thereby, preclud *187 ed the defendant the opportunity to seek funding to cure the rent deficiency. We conclude that the trial judge did not err in his rulings, except as to his conclusion that the plaintiffs’ attempt to collect amounts not owed did not constitute a violation of G.L.c. 93A.
Pursuant to G.L.c. 93A, §9, “[ejvery consumer is ... entitled to the full protection of law. If any person invades a consumer’s legally protected interests, and if that invasion causes the consumer a loss — whether that loss be economic or noneconomic — the consumer is entitled to redress under our consumer protection statute. A consumer is not, however, entitled to redress under G.L.c. 93A, where no loss has occurred. To permit otherwise is irreconcilable with the express language of G.L.C. 93A, §9....” Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc., 445 Mass. 790, 802 (2006). “The statutory damage provision does not supplant the requirement to prove causation under §9. It merely eliminates the need to quantify an amount of actual damages if the plaintiff can establish a cognizable loss caused by a deceptive act.” Id. at 799 n.18. Even a per se violation of G.L. c. 93A must cause a loss to satisfy the “injury” provision of G.Lc. 93A, §9. Id. at 798-799.
As we explained above, the trial judge did not err in finding that the defendant was not entitled to the waiver of the $25.00 minimum monthly rent. There was no invasion, therefore, of any protected interest. And, for the same reason, the failure to advise the defendant of the right to request a hardship exemption did not give rise to a G.L.c. 93A violation. As to the representations as to what rent arrearage was being demanded through the summary process complaint, the defendant has not demonstrated, apart from speculation, that his ability to secure funding to compensate the plaintiffs for the arrearage was compromised. The plaintiffs’ attempt to collect rent not owed after affirmatively indicating in writing that the rent would remain at $25.00 per month until November, 2011 stands differently. If it is determined that the plaintiffs had waived the rental increase for the months of July through October, 2011, the trial judge must then determine whether the plaintiffs were attempting to collect rent in the eviction action that they had indicated to the defendant was not owed and whether such act constituted an unfair and deceptive practice. If the judge determines that to be the case, the injury to the defendant would be apparent. The defendant was forced to defend against the plaintiffs’ attempt to collect an amount of rent not due.[7]
Retaliation. The defendant argues that the trial judge erred in concluding that the *188 commencement of this summary process action was not in retaliation for the defendant’s action in filing a complaint with the civil rights division of the Attorney General’s office regarding the conduct of the plaintiffs.
General Laws c. 239, §2A provides, in pertinent part:
It shall be a defense to an action for summary process that such action or the preceding action of terminating the tenant’s tenancy, was taken against the tenant for the tenants act of... reporting a violation or suspected violation of law as provided in section eighteen of chapter one hundred and eighty-six. ... The commencement of such action against a tenant, or the sending of a notice to quit upon which the summary process action is based,... within six months after the tenant has... made such report... shall create a rebuttable presumption that such summary process action is a reprisal against the tenant for engaging in such activities.... Such presumption may be rebutted only by clear and convincing evidence that such action was not a reprisal against the tenant and that the plaintiff had sufficient independent justification for taking such action, and would have in fact taken such action, in the same manner and at the same time the action was taken, even if the tenant had not... engaged in such activity.
The Supreme Judicial Court has stated that in a case requiring the showing of clear and convincing proof, such as this one, the burden of persuasion is met if the evidence “induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist.” Callahan v. Westinghouse Broadcasting Co., 372 Mass. 582, 588 (1977), quoting Dacey v. Connecticut Bar Assn., 170 Conn. 520, 537 (1976). It is a question of fact.
There was no error. The trial judge found that the defendant had filed the complaint one day prior to the service of the summary process summons and complaint and there was no evidence that the office of the Attorney General had notified the plaintiffs of the filing of the complaint prior to service of the summons and complaint. It was further found that the service of the summons and complaint was consistent with the plaintiffs’ policy of commencing summary process proceedings for nonpayment of rent and that the plaintiffs had been filing approximately ten to thirty actions per month. Moreover, the court found that, although the plaintiffs had entered into repayment agreements, the plaintiffs’ policy was conditioned upon the ability to make repayment of the rent arrearage over a six-month period. The trial judge specifically found that the plaintiffs deemed the defendant’s repayment proposal “inadequate and concluded that the summary process action had to be filed. It would have taken twenty months before the defendant would have paid the arrear-age. ...” In applying the clear and convincing evidence test, the trial judge concluded “that the plaintiff[s] had sufficient independent justification for [filing this action], and that the plaintiff [s] would have in fact taken such action, in the same manner and at the same time,” regardless of the defendant’s action in filing the complaint with the Attorney General.
Forfeiture. Implied in the trial judge’s finding in favor of the plaintiffs for possession was the denial of the defendant’s request of the court to exercise its equitable *189 powers and find that principles of equity in this case disfavor the forfeiture of the defendants right to possession of the premises. Under Massachusetts law, a tenant may interpose equitable defenses in a landlord’s legal proceeding to recover possession, In re 29 Newbury Street, Inc., 856 F.2d 424, 428 (1st Cir. 1988), and the law disfavors forfeitures in the landlord-tenant context. See, e.g., Edward’s Fine Furniture, Inc. v. DiTullio, 356 Mass. 380, 382 (1969); Mulcahy & Dean, Inc. v. Hanley, 332 Mass. 232, 234 (1955); Paeff v. Hawkins-Waskington Realty Co., 320 Mass. 144, 147-148 (1946); Judkins v. Charette, 255 Mass. 76, 83 (1926).
The principal argument raised by the defendant is that the amount of arrearage determined to be due the plaintiffs is unlikely to lead to the financial distress or other harm to the plaintiffs, who derive income from 500 other apartments, and that the defendant, who has lived at the location for fifteen years, will lose his Section 8 subsidy because that subsidy is tied to the plaintiffs’ property and not transferrable. This argument ignores the impact upon Federal programs if each subsidized tenant defaulted in the rent obligation and was granted possession simply on the principle of equity notwithstanding the nonpayment of rent. We find no abuse of discretion.
Consistent with this opinion, we remand for a new trial on the amount of rent owed and on the defendant’s counterclaim for an unfair and deceptive practice based on the plaintiffs’ attempt to collect rent in the eviction action that may not have been owed, including the assessment of any damages and attorney’s fees. Judgment for the plaintiffs for possession is vacated. That issue shall be determined in accordance with G.L.c. 239, §8A, fifth par. (“There shall be no recovery for possession ... if the amount found by the court to be due the landlord equals or is less than the amount found to be due the tenant... by reason of any counterclaim....”).

 The defendant also argues that the plaintiffs should have made the defendant aware of the hardship exemption. The defendant testified that he was unaware of his right to an exemption, and there was evidence at trial that the property manager knew of the exemption. As discussed below, the trial judge found no G.Lc. 93A violation arising from any failure of the plaintiffs to advise the defendant of the exemption. For future guidance, however, we note the words of one court in addressing the duty of the Federal government in advising recipients of certain Social Security benefits:
Since the elderly and generally poor plaintiffs in this case justifiably rely on the Government to properly fix their [Old Age, Survivors and Disability] benefits, they cannot be expected to seek professional services to review the checks and statements received each month. As a practical matter, the class members have no way of being apprised of their legal rights — in fact, would not even know that their legal rights were implicated — except through the notices they receive from the Government. Thus, if the Government fails to inform the plaintiffs of the prohibitions of section 207 (a) [of the Social Security Act] and the statute of limitations defense, the plaintiffs will suffer from deprivation of their benefits.
“Notices informing debtors of their legal rights as a due process requirement are not a new phenomenon in the law. Courts have required such information in communications from private creditors to debtors. See Finberg v. Sullivan, 634 F.2d 50, 62 (3d Cir.1980); Deary v. Guardian Loan Co., Inc., 534 F. Supp. 1178 (S.D.N.Y. 1982) (emphasis added).
Ellender v. Schweiker, 575 F. Supp. 590, 604 (S.D.N.Y. 1983), appeal dismissed, 781 F.2d 314 (2d Cir. 1986).

 The plaintiffs’ ledger indicated that the total amount during the period was $3,653.00.

 The plaintiffs sent the defendant a letter on September 19, 2011, stating that effective July 1,2011, the defendant’s monthly rental rate was $402.00 per month but that the defendant would “not need to start paying this [amount] until November 1, 2011” (emphasis in original).

 The trial ended on February 22,2013, and the trial judge issued findings and rulings in June, 2013. He included in the findings rent owed for the months of March through June, 2013 in the amount of $25.00 for each month. A calculation of damages must be based only on the evidence adduced at trial and not on any amounts that are not contained in the trial record.

 It is not argued that the attempt to collect as rent defendant’s debt to the plaintiffs’ predecessor in interest, i.e., $1,671.41, was an unfair and deceptive practice.

 The defendant was represented in the trial court by both private counsel and a legal service agency. We are unaware of what agreement the defendant reached with either private counselor the legal service agency as to terms of compensation. Damages may be measured by the amount of legal fees incurred. “If a c. 93A violation forces someone to incur legal fees and expenses that are not simply those incurred in vindicating that person’s rights under the statute, those fees may be treated as actual damages in the same way as other losses of money or property.” Siegel v. Berkshire Life Ins. Co., 64 Mass. App. Ct. 698, 703 (2005). But, in any event, because the defendant suffered a demonstrated injury, he would be entitled to an award of $25.00 as nominal damages. See G.L.c. 93A, §9 (damages are awarded in the “amount of actual damages or twenty-five dollars, whichever is greater”).